**FILED**

**June 28, 2016**

**TN COURT OF
WORKERS' COMPENSATION
CLAIMS**

**Time: 4:04 PM**



## TENNESSEE BUREAU OF WORKERS' COMPENSATION
## IN THE COURT OF WORKERS' COMPENSATION CLAIMS
## AT COOKEVILLE

| | | |
|---|---|---|
| Shanan Holborn, | ) | **Docket Nos.: 2015-04-0010** |
| **Employee,** | ) | **2015-04-0065** |
| | ) | |
| **v.** | ) | **State File Nos.: 62832-2014** |
| | ) | **49410-2015** |
| **Walmart,** | ) | |
| **Employer,** | ) | |
| **And** | ) | **Judge Robert Durham** |
| | ) | |
| **New Hampshire Insurance Co.,** | ) | |
| **Insurance Carrier/TPA.** | ) | |

---

## EXPEDITED HEARING ORDER GRANTING MEDICAL BENEFITS

---

THIS CAUSE came before the undersigned Workers' Compensation Judge on June 9, 2016, upon the Requests for Expedited Hearing (REH) filed by the employee, Shanan Holborn, on January 11 and April 11, 2016.[1] Ms. Holborn filed the Requests pursuant to Tennessee Code Annotated section 50-6-239 (2015) to determine if the employer, Walmart, is obligated to pay for emergency room visits as well as additional medical treatment for Ms. Holborn's work-related injuries.[2]

The dispositive issues are whether Ms. Holborn is entitled to further medical treatment for her right foot injury, and whether she is entitled to further medical treatment

---

[1] Ms. Holborn has alleged two injuries: an injury to her foot on July 4, 2014, and an injury to her low back on August 12, 2014. For the purpose of judicial economy, the Court consolidated these claims by Order entered on April 19, 2016.

[2] At the hearing, Walmart agreed it did not contest that either accident occurred as Ms. Holborn testified. Walmart further agreed that upon provision of a mileage statement from Ms. Holborn, it would pay any mileage expenses owed for treatment received from authorized physicians in accordance with Workers' Compensation Law. Finally, Ms. Holborn had sought to amend her Dispute Certification Notices to include temporary disability benefits on the grounds that she was not aware the attorney who represented her at the time had not included it as an issue; however, the Court denied her motion on the grounds that her attorney's actions were imputed to her.

1

for her low back injury with a doctor other than Dr. Douglas Matthews. A secondary issue is whether Ms. Holborn was justified in seeking unauthorized emergency room treatment for her low back, and is thus entitled to reimbursement for those expenses. The Court finds the evidence submitted by Ms. Holborn is sufficient to establish she is entitled to additional treatment for her right foot injury, and continued treatment with Dr. Leonardo Rodriguez-Cruz for her low back injury. However, she provided insufficient evidence to establish at this time that she is entitled to reimbursement for expenses incurred through emergent treatment.

## History of Claim

Ms. Holborn is a thirty-one-year-old resident of Putnam County, Tennessee, who worked as a stock clerk for Walmart. (T.R. 1 at 1.) Ms. Holborn testified that on July 4, 2014, she was in the stockroom with a pallet jack waiting for an assistant manager to unload a pallet from a truck so she could take it to the produce section for stocking. The assistant manager accidentally bumped Ms. Holborn's pallet jack with the pallet on her forklift, causing the pallet jack to roll over Ms. Holborn's right foot.

Ms. Holborn hobbled to the breakroom where she removed her shoe and sock and observed her foot to be bruised, swollen, and indented from the pallet jack. Her manager, Joshua Emmert, provided her with paperwork, including a First Report of Injury and a form outlining the procedure to obtain medical care, titled "Premier Notification Letter." (Ex. 32.) Ms. Holborn signed the provided documents.

Ms. Holborn testified that Mr. Emmert then told her that if she sought medical treatment for her foot, her job could be in jeopardy. Amanda Tinch, Ms. Holborn's co-worker, testified she was standing at the breakroom door to assist Ms. Holborn, and she heard Mr. Emmert tell Ms. Holborn that if she sought medical treatment, Walmart might terminate her. Mr. Emmert denied making such assertions, and testified Ms. Holborn would have been given a panel of physicians and transported to the doctor by a member of management had she chosen to do so. Mr. Emmert further testified Ms. Holborn spoke to a nurse on a designated "medical hotline" and voluntarily decided to forego medical care. He also stated that if Ms. Holborn had elected to receive medical treatment, Walmart policy would have required both she and the assistant manager involved in the incident to take a drug test.

In any event, Ms. Holborn did not seek medical care that morning, but instead went home and soaked her foot. She testified she attempted to work during the next few weeks, but her injury slowed her down. She further stated she felt harassed by Mr. Emmert's job assignments, his constant supervision, and his refusal to let other employees assist her once their job duties were complete. Mr. Emmert denied such behavior.

2

With regard to her second claim, Ms. Holborn testified that on August 12, 2014, she picked up a case of vinegar while working at Walmart and felt a "pop" in her back. She immediately experienced intense pain in her low back that radiated throughout her body. After going home for lunch, she found she could barely stand, so she called Mr. Emmert and informed him she was going to the emergency room for treatment. Mr. Emmert assented, and Ms. Holborn sought treatment at Cookeville Regional Medical Center. (Ex. 1.) The parties agreed Walmart paid for this authorized visit.

At the hospital, Dr. William Gallmard noted Ms. Holborn complained of severe pain in her low back that radiated into her buttocks and both legs. (Ex. 1 at 6.) He ordered x-rays that revealed moderate scoliosis in the lumbar spine. (Ex. 2.) Dr. Gallmard prescribed medication and recommended she be off work until evaluated by a workers' compensation physician. (Ex. 1 at 2.)

Ms. Holborn presented the ER report to Walmart the following day, and Brandace, H.R. representative for Walmart, presented her with a panel of physicians from which she chose Dr. Alan Drake as an authorized physician. (Ex. 4.) Ms. Holborn saw Dr. Drake that afternoon. (Ex. 36 at 16.) On examination, he noted diffuse muscle tenderness and mild spasms from approximately L1-L4. He diagnosed her with a back sprain, continued the medications prescribed by the emergency room, and recommended restrictions of no lifting more than five pounds and no prolonged standing. (Ex. 36 at 17.) Dr. Drake did not record any information regarding the foot injury of July 4.

Ms. Holborn returned to Dr. Drake on August 25. (Ex. 36 at 13.) She told him she tried to return to work, but did not go back after the first day due to the pain in her back. She still complained of low back pain on the left side. *Id.* On exam, Dr. Drake continued to note muscle spasms from T11 through L3 and restricted range of motion with flexion and bending. (Ex. 36 at 14.) Dr. Drake ordered physical therapy and continued restrictions. *Id.*

On September 15, Ms. Holborn returned to Dr. Drake. (Ex. 36 at 10.) Her symptoms remained essentially unchanged, despite being in the middle of physical therapy. *Id.* Dr. Drake ordered an MRI of her lumbar spine. (Ex. 36 at 11.) The MRI results noted degenerative disc disease at L3-S1 with mild right foraminal narrowing and disc material likely contacting the exiting right L5 nerve root. (Ex. 10.) On October 1, Dr. Drake saw Ms. Holborn for follow-up. (Ex. 36 at 6.) He noted her symptoms remained essentially unchanged. *Id.* After reviewing the MRI, he recommended that a neurosurgeon evaluate her, and Walmart authorized Dr. Leonardo Rodriguez-Cruz with Tier One Neurosurgery to provide additional care. (Ex. 36 at 7.)

On October 6, Ms. Holborn presented to the emergency room at Cookeville Regional complaining of low back pain as well as right shoulder pain. (Ex. 12.) Walmart did not authorize this visit. The attending physician diagnosed her with lumbar

degenerative disc disease and provided some pain medication.[3] *Id.*

On December 8, Dr. Cruz evaluated Ms. Holborn. (Ex. 13 at 3.) Dr. Cruz diagnosed Ms. Holborn with lumbago and idiopathic scoliosis and recommended additional physical therapy. *Id.*

Walmart sent Dr. Cruz's physical therapy recommendation through utilization review, which denied the request as not medically necessary. (Ex. 13 at 3.) As a result, Dr. Cruz recommended Ms. Holborn undergo a Functional Capacity Evaluation (FCE), which was performed by Star Physical Therapy. (Ex. 14.) The FCE report noted a "variable" result with indications of symptom magnification, but good effort with lifting and functional tasks. (Ex. 14 at 3.) Despite the variable result, the therapist felt the FCE was a good indicator of Ms. Holborn's maximum functional capabilities. *Id.*

On January 15, 2015, Dr. Cruz faxed a letter to the adjuster for Walmart stating:

> It is my medical opinion that the alleged incident that occurred on or about 8-12-2014 did contribute to more than 50% to the current injury. The patient clearly stated that her symptoms began after lifting a case of vinegar. She denies any previous history of back pain. Unless evidence can be provided to the contrary, her history is declarative.

(Ex. 15.)

Dr. Cruz saw Ms. Holborn for the last time on January 19, 2015. (Ex. 16 at 4.) She still complained of moderate low back pain that did not radiate. He diagnosed her with lumbago, idiopathic scoliosis and kyphoscoliosis. (Ex. 16 at 5.) Dr. Cruz placed Ms. Holborn at maximum medical improvement with a 2% whole body impairment. *Id.* He placed her in the "light-medium" work category and placed restrictions of: lifting no more than twenty-five pounds occasionally from floor to shoulder; fifteen pounds from shoulder to overhead; carrying no more than twenty pounds occasionally; pushing no more than seventy-three pounds and pulling no more than sixty pounds. *Id.* At that point, he discharged her from care. *Id.*

Following her release from Dr. Cruz, Ms. Holborn returned to work at Walmart on January 27. (Ex. 18.) She worked that day, but asserted she was unable to work within the restrictions. She did not return to work, and on June 11, 2015, Walmart terminated her employment. (Ex. 19.)

---

[3] Ms. Holborn also sought unauthorized treatment through the emergency room on one other occasion, but failed to lay the foundation necessary to make those records an exhibit. Records of medical expenses incurred through these emergency room visits were marked as an exhibit for identification, but Ms. Holborn failed to lay the foundation necessary to make those records an exhibit as well, and thus they are not part of the record.

Ms. Holborn then retained counsel to assist her with her claims, and sought medical treatment for the July 4, 2014 foot injury. Walmart gave her a panel that again included Dr. Drake, and she signed the panel agreement form selecting him as her treating physician. (Ex. 35.)

Ms. Holman saw Dr. Drake on July 19, 2015. (Ex. 30 at 2.) He described her history as "highly convoluted and emotional." *Id.* According to the notes, Ms. Holman ascribed her back pain to her altered gait due to her foot injury. Dr. Drake noted that there is no mention of an injury to her right foot in any of his notes from 2014. *Id.* His treatment note indicated Ms. Holman sought pain relievers because the medication she received from Dr. Cruz had run out. *Id.* Dr. Drake ordered x-rays of her right foot, which revealed no abnormalities. (Ex. 30 at 6.) He indicated he would attempt to refer her to a neurosurgeon, but he did "not subscribe to her theory of causation." *Id.* It also concerned him that her "current story does not match up with the original history provided at the first few visits." *Id.*

On August 5, 2015, Walmart offered a panel of neurosurgeons to Ms. Holman that included Dr. Gregory Lanford, whom she chose. (Ex. 20.) However, Dr. Lanford decided not to see her. (Ex. 21.) Walmart replaced Dr. Lanford with Dr. Douglas Matthews, and Ms. Holman signed a panel form selecting Dr. Matthews on August 28. (Ex. 23.) However, Ms. Holman testified her attorney had already completed the panel form when she signed it.

In any event, Ms. Holman saw Dr. Matthews on October 21, 2015. (Ex. 24 at 3.) Ms. Holborn testified Dr. Matthews told her at the beginning of the examination that she was there only for an independent medical evaluation and he would not provide treatment. Dr. Matthews began his record by noting Ms. Holman had been "referred for independent medical examination by [CMI]." Furthermore, he noted, "The IME process has been explained to the examinee and she understands that no patient treating physician relationship was established." *Id.*

On examination, Ms. Holborn complained of "continued right paraspinal pain with a history of migraines, swelling in her hands, legs burning and tingling" that did not get better with physical therapy. (Ex. 24 at 4.) Dr. Matthews reviewed the MRI and opined it showed a minimal right paracentral disc bulge at L3-4 and mild thoracolumbar scoliosis. *Id.* Dr. Matthews opined Ms. Holborn exaggerated her pain. (Ex. 24 at 5.) He diagnosed her with a thoracolumbar strain and pre-existing thoracolumbar scoliosis. *Id.*

Dr. Matthews concluded by opining his objective findings on exam do not justify Ms. Holborn's subjective complaints, and he did not believe her current complaints causally relate to her accident on August 12, 2014. *Id.* He further opined additional medical treatment would not be beneficial for the thoracolumbar strain she suffered in 2014 and that Dr. Cruz's assessment of MMI and restrictions were reasonable. (Ex. 24 at

5

6.)

At the hearing, Ms. Holborn's mother, Elizabeth Romenake, and her husband, Jermaine Francis, also testified. Both testified Ms. Holborn was quite active prior to her injuries in 2014; she worked, played with her children, played sports and ran on a regular basis. However, since that time, she is substantially limited in undertaking any physical activity.

Ms. Holborn filed Petitions for Benefit Determination seeking medical benefits on July 20, 2015, and January 11, 2016. The parties did not resolve the disputed issues through mediation, and the Mediating Specialist filed Dispute Certification Notices on August 28, 2015, and February 12, 2016. Mr. Holborn filed REHs on February 8, 2016, and April 11, 2016. The Court consolidated the claims by order on April 19, 2016. The Court heard the matter on June 9, 2016.

At the Expedited Hearing, Ms. Holborn contended her injuries, which Walmart did not contest, warrant further medical treatment from authorized physicians. She further contended she was entitled to reimbursement for medical treatment incurred through unauthorized visits to the emergency room. Walmart countered that Ms. Holborn has received all reasonable and necessary medical care to which she is entitled for both her foot injury and her low back injury, and Ms. Holborn produced insufficient evidence to establish she is entitled to additional treatment. Walmart further contested any expenses Ms. Holborn incurred through unauthorized visits to the emergency room on the grounds that there is no medical proof establishing the reasonableness or necessity of such care.

**Findings of Fact and Conclusions of Law**

The Court considers the following legal principles in reaching its conclusions in this matter. The Court must interpret the Workers' Compensation Law fairly, impartially and in accordance with basic principles of statutory construction favoring neither the employee nor employer. Tenn. Code Ann. § 50-6-116 (2015). The employee in a workers' compensation claim has the burden of proof on all essential elements of a claim. *Scott v. Integrity Staffing Solutions,* No. 2015-01-0055, 2015 TN Wrk. Comp. App. Bd. LEXIS 24, at *6 (Tenn. Workers' Comp. App. Bd. Aug. 18, 2015).

Ms. Holborn need not prove every element of her claim by a preponderance of the evidence in order to obtain relief at an expedited hearing. *McCord v. Advantage Human Resourcing,* No. 2014-06-0063, 2015 TN Wrk. Comp. App. Bd. LEXIS 6, at *7-8, 9 (Tenn. Workers' Comp. App. Bd. Mar. 27, 2015). At an expedited hearing, Ms. Holborn has the burden to come forward with sufficient evidence from which the trial court can determine she is likely to prevail at a hearing on the merits. *Id.* This lesser evidentiary standard "does not relieve an employee of the burden of producing evidence of an injury by accident that arose primarily out of and in the course and scope of employment at an

6

expedited hearing, but allows some relief to be granted if that evidence does not rise to the level of a 'preponderance of the evidence.'" *Buchanan v. Carlex Glass Co.*, No. 2015-01-0012, 2015 TN Wrk. Comp. App. Bd. LEXIS 39, at *6 (Tenn. Workers' Comp. App. Bd. Sept. 29, 2015).

At the hearing, Walmart informed the Court it did not contest the compensability of the July 4, 2014 injury to Ms. Holborn's right foot or the August 12, 2014 injury to her low back. Therefore, Walmart is obligated to provide "such medical and surgical treatment . . . made reasonably necessary by accident" to Ms. Holborn for each incident. *See* Tenn. Code Ann. § 50-6-204(a)(1)(A) (2015).

With regard to Ms. Holborn's back injury, Walmart asserted it went beyond the care required by statute when it allowed Ms. Holborn to select Dr. Matthews from a panel after Dr. Cruz opined she was at MMI and released her from care. (Ex. 23.) In his report, Dr. Matthews clearly opined Ms. Holborn's current symptoms are not due to the thoracolumbar strain she suffered on August 12, 2014, and she does not require any additional treatment for the strain. (Ex. 24 at 5-6.) Thus, given the authorized physician's opinion, Walmart argued it is not obligated to provide additional care for Ms. Holborn's low back condition.

However, Ms. Holborn testified that when she saw Dr. Matthews, he informed her at the outset she was only there for an independent medical evaluation, not treatment. Dr. Matthews' record corroborates this testimony. (Ex. 24 at 3.) In fact, Dr. Matthews made it very clear he was seeing her only to provide an evaluation for "his client," referring to the claims adjuster for Walmart. *Id.* Furthermore, he noted, "The IME process has been explained to the examinee and she *understands that no patient treating physician relationship was established.*" *Id.* (Emphasis added.)

Thus, Dr. Matthews was never Ms. Holborn's authorized physician for treatment of her work-related back injury. The fact that Walmart provided a panel from which Ms. Holborn could choose an evaluating physician does not make him so. The only neurosurgeon actually authorized to provide care for Ms. Holborn's work-related injury pursuant to Tennessee Code Annotated section 50-6-204(a)(1)(A) (2015) is Dr. Cruz. Dr. Cruz's opinion with regard to the cause of her symptoms is entitled to a presumption of correctness while Dr. Matthews' opinion is not. *See* Tenn. Code Ann. § 50-6-102(14)(E) (2015).

Unlike Dr. Matthews, Dr. Cruz opined Ms. Holborn's current low back pain did causally relate to her work injury on August 12, 2014, given that she had no history of back pain prior to the incident. (Ex. 15.) Walmart produced no evidence that Ms. Holborn suffered from back pain before August 12, 2014. It is generally within a trial court's discretion to choose which expert to accredit when there is a conflict of expert opinions. *Kellerman v. Food Lion, Inc.,* 929 S.W.2d 333, 334 (Tenn. 1996); *Johnson v.*

*Midwesco, Inc.*, 801 S.W.2d 804, 806 (Tenn. 1990). The Court finds Dr. Matthews' opinion, standing alone, is insufficient to overcome the presumption of correctness afforded Dr. Cruz's opinion. *See* Tenn. Code Ann. § 50-6-102(14)(E) (2015).

The Court further finds Dr. Cruz remains Ms. Holborn's authorized physician for her August 12, 2014 work injury. "Once the Employee had justifiably engaged [a physician], the subsequent efforts by the Employer to arrange for a different physician did not preclude the Employee from continuing under his care." *Arnett v. McMinn Cnty. Gov't*, No. E2012-01356-WC-R3-WC, Tenn. LEXIS 596, at *36 (Tenn. Workers' Comp. Panel July 9, 2013). While Dr. Cruz found Ms. Holborn to be at MMI and discharged her from care on January 19, 2015, there is no evidence indicating he opined Ms. Holborn would not require additional medical treatment for her symptoms resulting from her work-related injury. As a result, the Court finds Ms. Holborn is entitled to return to Dr. Cruz, and Walmart is obligated to pay for any reasonable and necessary medical treatment Dr. Cruz may recommend for treatment of Ms. Holborn's work-related injury on August 12, 2014.

With regard to Ms. Holborn's right foot injury, it appears to the Court that Dr. Drake may have misconstrued the reason for her visit on July 19, 2015. (Ex. 30 at 2.) Ms. Holborn selected Dr. Drake to provide reasonable and necessary medical treatment Ms. Holborn might require for the injury to her foot on July 4, 2014; however, Dr. Drake's record primarily concerns Ms. Holborn's low back pain and its possible relationship to her foot injury. *Id.* Dr. Drake was concerned that his previous records made no mention of a right-foot injury; however, at that time, he was treating Ms. Holborn's low back. Furthermore, there is no question Ms. Holborn injured her right foot on July 4, 2014. *Id.*

With regard to his conclusions, Dr. Drake simply indicated he planned to refer Ms. Holborn to a neurosurgeon, and did not provide any opinion regarding the need for additional treatment of her right foot. (Ex. 30 at 6.) As a result, the Court finds Ms. Holborn is entitled to return to Dr. Drake for an assessment of her right foot, and Walmart is obligated to pay for any reasonable and necessary medical treatment recommended by Dr. Drake for Ms. Holborn's work-related injury of July 4, 2014.

Regarding Ms. Holborn's unauthorized emergency room visits whether an employee is justified in seeking payment for unauthorized medical expenses from an employer depends upon the circumstances of each case. *Buchanan v. Mission Ins. Co.*, 713 S.W.2d 654, 656 (Tenn. 1986). In *Buchanan*, the Supreme Court concluded that the statute:

> [M]akes it clear that the intent [of the Legislature] . . . was for the employee
> to certainly do no less than consult his employer before incurring the

expenses called for by that statute if the employee expects the employer to pay for it. The opposite would seem to be against public policy.

*Id.* at 657. In addition, the Tennessee Supreme Court has held that when an employee receives medical care for a work-related injury that the employer did not authorize, the employee must establish the necessity and reasonableness of the charges before the employer is responsible. *Moore v. Town of Collierville,* 124 S.W.3d 93, 98 (Tenn. 2004).

In this matter, Ms. Holborn did not provide any testimony regarding her unauthorized emergency room visits, other than records from her visit on October 6. There was no evidence establishing why emergent care was reasonable or necessary. *Id.* Furthermore, Ms. Holborn did not provide any evidence as to whether she attempted to receive authorization from Walmart before seeking emergent care for those unauthorized visits. *Buchanan,* at 656. Under the circumstances, the Court finds Ms. Holborn provided insufficient evidence to establish she would likely prevail at trial regarding reimbursement of emergency room expenses. As a result, the Court denies her request for reimbursement at this time.

**IT IS, THEREFORE, ORDERED** as follows:

1.   Walmart shall authorize Dr. Cruz to provide reasonable and necessary medical treatment for Ms. Holborn's work-related injury of August 12, 2014. Should Dr. Cruz refuse to see Ms. Holborn, Walmart shall provide a panel from which Ms. Holborn may select an authorized physician pursuant to Workers' Compensation Law.

2.   Walmart shall authorize Dr. Drake to provide reasonable and necessary medical treatment for Ms. Holborn's work-related foot injury of July 4, 2014. Should Dr. Drake refuse to see Ms. Holborn, Walmart shall provide a panel from which Ms. Holborn may select an authorized physician pursuant to Workers' Compensation Law.

3.   Mr. Holborn's request for reimbursement of medical expenses is denied at this time.

4.   This matter is set for Initial Hearing/Status Conference on August 5, 2016, at 9:00 a.m. C.T.

5.   **Unless interlocutory appeal of the Expedited Hearing Order is filed, compliance with this Order must occur no later than seven business days from the date of entry of this Order as required by Tennessee Code Annotated section 50-6-239(d)(3) (2015). The Insurer or Self-Insured Employer must submit confirmation of compliance with this Order to the Bureau by email to WCCompliance.Program@tn.gov no later than the seventh business day after**

9

entry of this Order. **Failure to submit the necessary confirmation within the period of compliance may result in a penalty assessment for non-compliance.**

6.  For questions regarding compliance, please contact the Workers' Compensation Compliance Unit via email WCCompliance.Program@tn.gov or by calling (615) 253-1471.

**ENTERED THIS THE 28TH DAY OF JUNE, 2016.**

Robert V. Durham, Judge
**Court of Workers' Compensation Claims**

**Initial Hearing:**

An Initial Hearing/Status Conference has been set with Judge Robert Durham, Court of Workers' Compensation Claims. You must call 615-253-0010 or toll-free at 866-689-9049 to participate in the Initial Hearing.

Please Note: You must call in on the scheduled date/time to participate. Failure to call in may result in a determination of the issues without your further participation. All conferences are set using Central Time (CT).

Right to Appeal:

Tennessee Law allows any party who disagrees with this Expedited Hearing Order to appeal the decision to the Workers' Compensation Appeals Board. To file a Notice of Appeal, you must:

1. Complete the enclosed form entitled: "Expedited Hearing Notice of Appeal."

2. File the completed form with the Court Clerk *within seven business days* of the date the Workers' Compensation Judge entered the Expedited Hearing Order.

3. Serve a copy of the Expedited Hearing Notice of Appeal upon the opposing party.

4. The appealing party is responsible for payment of a **filing fee in the amount of $75.00.** Within ten calendar days after the filing of a notice of appeal, payment must be received by check, money order, or credit card payment. Payments can be made in person at any Bureau office or by United States mail, hand-delivery, or other delivery service. In the alternative, the appealing party may file an Affidavit

of Indigency, on a form prescribed by the Bureau, seeking a waiver of the filing fee. The Affidavit of Indigency may be filed contemporaneously with the Notice of Appeal or must be filed within ten calendar days thereafter. The Appeals Board will consider the Affidavit of Indigency and issue an Order granting or denying the request for a waiver of the filing fee as soon thereafter as is practicable. **Failure to timely pay the filing fee or file the Affidavit of Indigency in accordance with this section shall result in dismissal of the appeal.**

5. The parties, having the responsibility of ensuring a complete record on appeal, may request, from the Court Clerk, the audio recording of the hearing for the purpose of having a transcript prepared by a licensed court reporter and filing it with the Court Clerk within ten calendar days of the filing of the Expedited Hearing Notice of Appeal. Alternatively, the parties may file a joint statement of the evidence within ten calendar days of the filing of the Expedited Hearing Notice of Appeal. The statement of the evidence must convey a complete and accurate account of what transpired in the Court of Workers' Compensation Claims and must be approved by the workers' compensation judge before the record is submitted to the Clerk of the Appeals Board.

6. If the appellant elects to file a position statement in support of the interlocutory appeal, the appellant shall file such position statement with the Court Clerk within five business days of the expiration of the time to file a transcript or statement of the evidence, specifying the issues presented for review and including any argument in support thereof. A party opposing the appeal shall file a response, if any, with the Court Clerk within five business days of the filing of the appellant's position statement. All position statements pertaining to an appeal of an interlocutory order should include: (1) a statement summarizing the facts of the case from the evidence admitted during the expedited hearing; (2) a statement summarizing the disposition of the case as a result of the expedited hearing; (3) a statement of the issue(s) presented for review; and (4) an argument, citing appropriate statutes, case law, or other authority.

# APPENDIX

Exhibits:

1. Medical records from Cookeville Regional Medical Center
2. X-ray report
3. First Report of Injury
4. Choice of Physician form
5. Physician Work Status Report
6. Work release form
7. Patient Work Status form
8. Cumberland Physical Therapy records
9. Work Release form
10. MRI report
11. Work Release form
12. Medical records from Cookeville Regional Medical Center
13. Prium Utilization Review report
14. FCE report
15. Letter from Dr. Cruz
16. Medical records of Dr. Cruz and Dr. Matthews
17. Work restrictions from Dr. Cruz
18. Letter from Walmart to Ms. Holborn
19. Separation notice
20. Choice of Physician form
21. Letter from Walmart's counsel to Ms. Holborn's counsel
22 Wage Statement
23. Choice of Physician form
24. Medical records of Dr. Matthews
25. Affidavit of Shanan Holborn
26. Affidavit of Fred Antes
27. Medical expense records from Cookeville Regional (marked for I.D. only)
28. Picture of Walmart stockroom
29. Medical records of Dr. Alan Drake for August 12, 2014 injury
30. Medical records of Dr. Alan Drake for July 4, 2014 injury
31. Walmart Associate Incident report
32. Walmart notification of benefits letter and other forms
33. Walmart witness statement
34. First Report of Injury
35. Choice of Physician Form
36. Medical records of Dr. Alan Drake
37. Affidavit of Shanan Holborn
38. Walmart's redacted affidavit of Shanan Holborn for foot injury
39 Walmart's redacted affidavit of Shanan Holborn for back injury

40. Wage statement for foot injury
41. Wage statement for back injury
42. Walmart's pre-compensation hearing statement for foot
43. Walmart's pre-compensation hearing statement for back
44. Employee's Response to Employer's First Set of Requests for Admissions
45. Walmart wage records subsequent to Ms. Holborn's injury

Technical Record:

1. Petition for Benefit Determination for back injury
2. Petition for Benefit Determination for foot injury
3. Dispute Certification Notice for back injury
4. Dispute Certification Notice for foot injury
5. Request for Expedited Hearing for back injury
6. Request for Expedited Hearing for foot injury
7. Ms. Holborn's Motion to Amend DCNs
8 Walmart's Motion to Dismiss REH
9. Order Denying Parties' Motions
10. Order Consolidating Expedited Hearings
11. Order Setting Expedited Hearing
12. Subpoenas Issued on behalf of Ms. Holborn
13. Ms. Holborn's Pre-Hearing Statement

## CERTIFICATE OF SERVICE

I hereby certify that a true and correct copy of the Expedited Hearing Order For Medical Benefits was sent to the following recipients by the following methods of service on this the 28th day of June, 2016.

| Name | Certified Mail | Via Fax | Via Email | Service sent to: |
|------|------|------|------|------|
| Shanan Holborn | X | | X | 100 Maddux Ct., Apt. G1 Cookeville, Tennessee 38501 Shananholborn321@gmail.com |
| Tom Cassidy | | | X | Tom.cassidy@mgclaw.com |

Penny Shrum, Clerk of Court
Court of Workers' Compensation Claims
WC.CourtClerk@tn.gov